UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 21-CR-623 (CRC) |
| MICHAEL ECKERMAN and : | |
| KIRSTYN NIEMELA, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS IDENTIFICATION EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Michael Eckerman's Motion to Suppress Identification Evidence, ECF No. 43. Although the investigating FBI agent used an unnecessarily suggestive identification procedure, the totality of the circumstances shows that the victim officer's out-of-court identification of Defendant Eckerman was nevertheless sufficiently reliable to be admissible. *See Manson v. Brathwaite*, 432 U.S. 98, 113-117 (1977). The Court should therefore deny Defendant Eckerman's motion, admit the evidence, and permit the jury to determine what weight, if any, to give it.

**I.    FACTUAL BACKGROUND**

In the aftermath of the riot at the United States Capitol on January 6, 2021, the FBI received two tips from the public identifying Defendant Eckerman as the one of the rioters who unlawfully entered the U.S. Capitol building. Tipster-1 provided the FBI a photograph showing Defendant Eckerman wearing a load-bearing tactical vest, a red Trump hat, and yellow gloves posing in front of a painting of George Washington. *See Figure 1*. Tipster-1 identified Defendant Eckerman by name and stated that Defendant Eckerman had sent photographs, including this one, to friends on January 6, 2021, advertising his conduct.

1



*Figure 1*

Tipster-2 sent the FBI another photograph that Tipster-2 reported seeing on Facebook, which shows Defendant Eckerman wearing the same red Trump hat and load-bearing tactical vest and holding the yellow gloves. *See Figure 2*.



*Figure 2*

The FBI assigned Special Agent ("SA") Corey Green to investigate the tips concerning Defendant Eckerman's actions on January 6, 2021. Through review of law enforcement databases, SA Green determined Defendant Eckerman's cell phone number and obtained his cell phone call records via legal process. Based on those records, SA Green identified a person who spoke with Defendant Eckerman via cell phone on January 6, 2021, and interviewed that person ("the Witness"). The Witness told SA Green that when Defendant Eckerman returned from Washington, D.C. after January 6, Defendant Eckerman showed the Witness photographs from the riot and stated that he entered the U.S. Capitol building and took his photograph next to a picture of George Washington. *See Figure 1*.

SA Green also reviewed video surveillance footage captured by mounted cameras inside the U.S. Capitol building as well as by rioters themselves—mostly filmed on their cell phones— and found footage tracing Defendant Eckerman's path through out the U.S. Capitol building. This video footage shows that Defendant Eckerman entered the U.S. Capitol through the Senate Wing Doors at approximately 2:24 p.m., approximately ten minutes after the Capitol was first breached. Defendant Eckerman then proceeded through the Crypt.

As he exited the Crypt at approximately 2:27 p.m., Defendant Eckerman was part of a mob of rioters who confronted a line of U.S. Capitol Police ("USCP") officers who were standing just inside the Memorial Doors and attempting to prevent the rioters from further penetrating the U.S. Capitol building. Former USCP Officer K.Y. was one of those officers. Video footage shows Defendant Eckerman pushing and worming his way through this crowd of rioters to reach the front line of the standoff between the rioters and the line of USCP officers. *See Figure 3* (Defendant Eckerman circled in red).



*Figure 3*

Approximately one minute later, the mob of rioters succeeded in pushing past and breaking the police line. The mob, including Defendant Eckerman, then ascended the stairs just beyond the breached police line.

As part of his investigation into Defendant Eckerman and his associates, SA Green obtained a video in which Defendant Eckerman's voice can be heard bragging to others that he pushed down "six cops" while inside the U.S. Capitol.

On August 20, 2021, SA Green interviewed Officer K.Y. over the phone concerning Officer K.Y.'s experiences on January 6, 2021, particularly his memories of the breach by the Memorial Doors described above.[1] SA Green informed Officer K.Y. that he (SA Green) was

---

[1] This was the second time investigators interviewed Officer K.Y. concerning his actions on January 6, 2021, and recollections of the day. On February 4, 2021, an agent of the USCP Internal Affairs Division interviewed Officer K.Y. as part of the agent's investigation of the shooting of rioter Ashli Babbitt, which Officer K.Y. witnessed. The defense has been provided with the relevant portions of a transcript of that interview. During the interview, Officer K.Y. does not discuss having been pushed during the breach of the Memorial Doors, though he does describe

4

trying to determine whether Officer K.Y. had been pushed by any particular individual(s) during that breach incident. Officer K.Y. responded that he had been pushed a lot that day and there was a lot going on. After SA Green attempted to ask about a specific time frame when the breach occurred, Officer K.Y. stated that it was hard to say where he was at any particular time and asked SA Green if there was anything that SA Green could show him to refresh his recollection. SA Green thereafter sent Officer K.Y. two items via email: (1) U.S. Capitol surveillance footage showing the breach incident (i.e., the video screenshotted in *Figure 3*); and (2) the photograph included here as *Figure 2*, cropped to only show Defendant Eckerman. After Officer K.Y. reviewed the video and photograph, he responded to SA Green via email. *See* Ex. 1. In the most relevant section of the email, Officer K.Y. wrote:

> Based off of the photo and video provided, as well as my personal experience that day, I can with with [*sic*] extreme certainty confirm that the individual in question is the same one who pushed/shoved me to the ground. Especially considering his tactical vest is one in the same matching the photograph provided.
>
> For additional context, this clip took place right in-front [*sic*] of the interior of Memorial Door, on the southern side of the US Capitol building. Upon responding to the area I joined a rather small police line in hopes of pushing back numerous amount of unauthorized people. The person in question moved forward to the front-most aggressing line and ended up pushing me with aggressive force.

*Ex. 1*, Email from Officer K.Y. to SA Green, dated August 20, 2021.

Over a year later, on September 23, 2022, SA Mark Hastbacka re-interviewed former USCP Officer K.Y., who is now an FBI trainee. SA Hastbacka showed Officer K.Y. the same video clip that SA Green had sent to him, but at first Officer K.Y. did not recognize the video. Rather, he thought SA Green had sent him something clearer. Upon further examination, however,

---

taking a "stumble" near the Memorial Doors and being sprayed with a fire extinguisher.

Officer K.Y. stated that he recognized the video by the recorded computer mouse-arrow icon (manned by SA Green) seen tracing the Defendant's path toward the front of the police line. Officer K.Y. stated that a man wearing a tactical vest pushed him hard while his attention was diverted, causing Officer K.Y. to fall backward over a small set of steps and tumble to the ground. As he was getting up, another rioter sprayed him in the face with a fire extinguisher. Officer K.Y. stated that he recognized Defendant Eckerman as his assailant based on the video of Defendant Eckerman pushing his way through the crowd to the front of the confrontation with police and by the tactical vest Defendant Eckerman is captured wearing.

## II.     ARGUMENT

The admissibility of identification evidence is governed by "fairness as required by the Due Process Clause." *United States v. Rattler*, 475 F.3d 408, 411 (D.C. Cir. 2007) (citing *Manson*, 432 U.S. at 113). In determining the admissibility of a witness's out-of-court identification, courts employ a two-step process. *Id.* First, the Court must determine "whether the identification procedure 'was impermissibly suggestive.'" *Id.* (quoting *United States v. Washington*, 12 F.3d 1128, 1134 (D.C. Cir. 1994)). If not, the inquiry ends and the out-of-court identification is admissible. *See id.*

If a court finds that the identification procedure was in fact impermissibly suggestive, however, the court must then decide whether, under the totality of the circumstances, the identification was nevertheless "sufficiently reliable to preclude 'a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Manson*, 432 U.S. at 116). This second step "involves a balancing test in which courts weigh the degree of suggestiveness against the strength or weakness of factors indicating reliability." *United States v. Williams*, 507 F. Supp. 3d 181, 201 (D.D.C. 2020) (citing *Manson*, 432 U.S. at 114). To make this reliability determination, courts

consider at least the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson*, 432 U.S. at 114.  Identification evidence should not be suppressed unless "'the indicators of a witness' ability to make an accurate identification' are 'outweighed by the corrupting effect of law enforcement suggestion.'" *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012) (alterations omitted) (quoting *Manson*, 432 U.S. at 114).  In other words, "[i]f the identification is reliable despite its suggestiveness, it is admissible." *United States v. Thompson*, 1990 U.S. Dist. LEXIS 653, *1-3 (D.D.C. Jan. 23, 1990) (citing *Manson*, 432 U.S. at 114).

In applying this two-step inquiry, courts considering a motion to suppress identification evidence generally place the burden first on the defendant to demonstrate that the identification procedure was impermissibly suggestive.  S*ee United States v. Jones*, 689 F.3d 12, 17 (1st Cir. 2012); *United States v. Washam*, 468 F. App'x 568, 576-77 (6th Cir. 2012); *United States v. Mendoza*, 401 F. App'x 739, 741 (4th Cir. 2010); 44 Geo. L.J. Ann. Rev. Crim. Proc. 205, 211-16 (2015). If the defendant meets this burden, the government then bears the burden of demonstrating, under the totality of the circumstances, that the challenged identification is sufficiently reliable. *See id*.

An in-court identification by a witness of a defendant "need be excluded only if the [underlying] out-of-court identification was impermissibly suggestive." *Thompson*, 1990 U.S. Dist. LEXIS 653, at *5-6 (citing *United States v Bruner,* 657 F.2d 1278, 1294 (D.C. Cir. 1981)). If an underlying out-of-court identification was not suppressed as unduly suggestive and unreliable, subsequent in-court identification relying on the same basis must not be suppressed

7

either.  *Id.*  But "[i]f an out-of-court statement is held inadmissible, any subsequent in-court identification by the same witness will be barred, unless the prosecution can show an independent, untainted source of the in-court identification."  *United States v. Lawson*, 410 F.3d 735, 739 n.3 (D.C. Cir. 2005) (citing *United States v. Wade*, 388 U.S. 218, 241 (1967)).

### A. Even if the Identification Procedure Used by SA Green Was Suggestive, Officer K.Y.'s Out-of-Court Identification of Defendant Eckerman Is Reliable.

The Due Process Clause precludes admission of identifications only where police officers "use an identification procedure that is both suggestive and unnecessary."  *Perry*, 565 U.S. at 238-39. It follows that no *per se* rule bars admission of identifications based on procedures that are unduly suggestive.  *See Manson*, 432 U.S. at 111, 116.  To justify suppression, the identification must be unreliable.  *See id.*  Here, even if the identification procedure was "unnecessarily suggestive," the ensuing identification was not "so tainted . . . as to render it unreliable and therefore inadmissible."  *Perry*, 565 U.S. at 235.

Courts generally disfavor police use of a single photo in lieu of a photographic array.  *See Manson*, 432 U.S. at 111. But failure to use a photographic array does not justify suppressing Officer K.Y.'s out-of-court identification of Defendant Eckerman or precluding Officer K.Y. from testifying that the Defendant is the rioter who pushed him to the ground.  *Id.* at 116; *Rattler*, 475 F.3d at 411.  Officer K.Y.'s out-of-court identification exhibits sufficient indicia of reliability for the Court to admit it into evidence and leave it to the jury to evaluate how much credence or weight to give it.  *See Perry*, 565 U.S. at 239.

In determining the reliability of an out-of-court identification, courts should consider at least the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the

confrontation." *Rattler*, 475 F.3d at 411 (citing *Manson*, 432 U.S. at 114).

Here, Officer K.Y. had ample opportunity to view Defendant Eckerman's face and attire, in good lighting conditions, at the time Defendant Eckerman pushed him, causing him to fall down a small set of stairs and to the ground. Indeed, Officer K.Y. was face-to-face with the Defendant, and surveillance footage shows that Officer K.Y. had his hand on Defendant Eckerman's shoulder at the time of the push. Even seven-and-a-half months after the assault, Officer K.Y. distinctly remembered that the rioter who attacked him was wearing a tactical vest, just like Defendant Eckerman.

Although Officer K.Y.'s identification occurred over seven months after the incident, after viewing the video of the breach of the police line near the Memorial Doors and the photograph of the Defendant, Officer K.Y. responded to SA Green "with extreme certainty" that Defendant Eckerman was the rioter who pushed him. Courts in this Circuit and others have recognized that the reliability of an identification is "bolster[ed]" if it is made by "a trained law enforcement officer, who is 'expert' in observing criminals." *Williams*, 507 F. Supp. 3d at 201-02 (citing *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991); *Singleton v. United States*, 702 F.2d 1159, 1165–66 (D.C. Cir. 1983)). As a veteran USCP officer and FBI trainee, Officer K.Y. is such a trained law enforcement officer.

In addition to the factors discussed above, Officer K.Y.'s identification "was made in circumstances allowing care and reflection." *Manson*, 432 U.S. at 116. Officer K.Y. was not pressured by time, space, or the physical presence of SA Green or the Defendant at the time he made the identification. Because SA Green did not interview Officer K.Y. in person, there was no "coercive pressure to make an identification arising from presence of another." *Id.* SA Green did not communicate any exigency to Officer K.Y. or press for an immediate answer. "There was thus

9

little urgency and [Officer K.Y.] could view the photograph [and video] at his leisure." *Id.* Officer K.Y. had the ability to reflect on his memory, review the video and photograph, and draft an email response to SA Green, in his own space and at his own pace. While "identifications arising from single-photograph displays may be viewed in general with suspicion," here there was "little pressure on the witness to acquiesce in the suggestion such a display entails." *Manson*, 432 U.S. at 116 (citing *Simmons v. United States*, 390 U.S. 377, 383 (1968)).

Finally, the Court—and jury—may find Officer K.Y.'s out-of-court identification of Defendant Eckerman as reliable because it is corroborated by Defendant Eckerman's own statements. As detailed above, Defendant Eckerman was audio recorded bragging about pushing "cops" to the ground on January 6, 2021, which is consistent with the behavior Officer K.Y. attributes to him.

Accordingly, for all of the reasons stated above, Officer K.Y.'s "identification is reliable despite its suggestiveness" and should be admitted. *Thompson*, 1990 U.S. Dist. LEXIS 653, at *1-3 (citing *Manson*, 432 U.S. at 114).

### B. Cross-Examination and Zealous Advocacy in Closing, Not Suppression, Are the Proper Means to Address the Suggestiveness of SA Green's Identification Procedure.

In a case such as this, the proper course of action is not for the Court to suppress the evidence, but rather to allow it to be tested via the crucible of cross-examination, permit defense counsel to attack it in closing argument, and issue any limiting instruction the Court deems appropriate. As the Supreme Court has articulated, the inherent safeguards of the United States' adversarial legal system "leave the veracity of a witness to be testified by cross-examination, and the credibility of his testimony to be determined by a properly-instructed jury." *See Hoffa v. United States*, 385 U.S. 293, 311 (1966). Here, the jury, as the trier of fact, will have the opportunity to

assess Officer K.Y.'s credibility and determine what weight, if any, to afford his testimony in general and his identification of Defendant Eckerman as his assailant in particular. In other words, the ultimate issue—whether a rioter assaulted Officer K.Y. and, if so, whether Defendant Eckerman is the culprit—is one for the jury to resolve. If the Court finds it necessary and/or advisable, the Court can issue the jury a cautionary instruction.

If the Court finds, as it should, that admission of Officer K.Y.'s out-of-court identification of Defendant Eckerman would not violate Defendant Eckerman's due process rights, *see Manson*, 432 at 113-117; *Rattler*, 475 F.3d at 411, binding precedent holds that Officer K.Y. should not be precluded from making an in-court identification of Defendant Eckerman based on the same foundation, if he is able to do so. *See Bruner,* 657 F.2d at 1294; *Thompson*, 1990 U.S. Dist. LEXIS 653, at *5-6.

### C. There Is No Need for an Evidentiary Hearing.

A defendant is entitled to an evidentiary hearing on his motion to suppress "only upon factual allegations which, if established, would warrant relief." *United States v. Law*, 528 F.3d 888, 903-04 (D.C. Cir. 2008). Here, the Court may rule on the papers alone because even if the Court accepted all of Defendant Eckerman's factual contentions as true for the sake of argument, the law would still require the Court to deny the defendant's motion. *See id.* ("the right to an evidentiary hearing . . . turns on whether the district court needed to resolve any disputes of material fact to decide [the defendant's] suppression motion."); *see also United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (a court "may refuse a defendant's request for a suppression hearing . . . if the defendant fails to allege facts that, if proved, would require the grant of relief).

An evidentiary hearing is unnecessary to decide Defendant Eckerman's motion. As far as

11

the United States is aware, none of the facts detailed above concerning the identification procedure used by SA Green or Officer K.Y.'s statements in response are in dispute. The identification that Defendant Eckerman seeks to suppress was communicated in writing via an email that is in the possession of both parties. *See* Ex. A. An evidentiary hearing is thus unnecessary to establish the procedure SA Green used, the materials he provided to Officer K.Y. to review, or the exact words of Officer K.Y.'s subsequent identification. All that remains for the Court is to apply the balancing test outlined in *Manson* and its progeny to determine if sufficient indicia of reliability exist for the out-of-court identification despite the suggestive procedure, which is solely a matter of law.

### III.   CONCLUSION

For all of the reasons stated above, there is no basis for suppression. Even if the Court finds that SA Green's identification procedure was unduly suggestive, the totality of the circumstances indicates that Officer K.Y.'s out-of-court identification of Defendant Eckerman was sufficiently reliable to be admissible. Accordingly, the Court should deny Defendant Eckerman's suppression motion in its entirety.

The proper course of action is for the Court to admit Officer K.Y.'s out-of-court identification and permit Officer K.Y. to testify regarding whatever identifying characteristics of his assailant he can recall. Defendant Eckerman may then attack Officer K.Y.'s reliability via cross-examination and argue to the jury in closing that it should not credit his identification (and/or other aspects of his testimony). Ultimately, this Court should leave it to the jury, as the fact-finder, to determine whether Officer K.Y. was assaulted and, if so, whether Defendant Eckerman was the perpetrator.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney
Florida State Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370

*/s/ Jessica Arco*
JESSICA ARCO
Trial Attorney-Detailee
D.C. Bar No. 1035204
601 D St., NW
Washington, D.C. 20530
jessica.arco@usdoj.gov
Telephone: 202-514-3204